UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TIMOTHY J. LEHEY,

                        Plaintiff,             Docket No.:

        -against-                         **COMPLAINT**

NORTHWELL HEALTH, INC.,
NORTHWELL HEALTH ANESTHESIOLOGY, P.C.,     **JURY TRIAL DEMANDED**
NORTH SHORE-LIJ ANESTHESIOLOGY, P.C.

                        Defendants.
------------------------------------------------------------------X

    Plaintiff, Timothy J. Lehey, by and through his attorneys, The Dweck Law Firm, LLP, complains of the Defendants and respectfully sets forth to this Court as follows:

## NATURE OF THE ACTION

    1. This is an employment discrimination action to recover damages for discrimination on the basis of disability under the Americans with Disabilities Act 42 U.S.C. § 12101 ("ADA") and the New York State Executive Law, § 290, *et seq.* ("NYSHRL"). Plaintiff also asserts a claim against Defendants for violations of the New York State Department of Health Order for Summary Action dated August 18, 2021.

## INTRODUCTION AND NATURE OF ACTION

    2. Northwell Health is New York State's largest healthcare provider and private employer with more than 81,000 employees. North Shore-LIJ Anesthesiology, P.C. and Northwell Health Anesthesiology, P.C. are currently, or at all relevant times were, subsidiaries of Northwell Health. Plaintiff, age 67, is a Certified Registered Nurse Anesthetist. He has a B.A, in Psychology from the City University of New York, a Nursing Degree from Cornell University – New York Hospital

School of Nursing and a Master's Degree - Nurse Anesthesia from Columbia University. For the last 40 years he has held various professional roles including the Program Director for Columbia University School of Nursing, Nurse Anesthesia Program, Assistant Professor of Nursing at Columbia University School of Nursing and Chief Nurse Anesthetist at Columbia University Medical Center. In 2000 Plaintiff was hired by Northeastern Anesthesia which was purchased by Northwell Health in 2018. For 21 years Plaintiff performed his job in an outstanding manner and was well liked by his colleagues and patients. During the period from the onset of COVID in early 2020 and continuing through his termination on September 30, 2021 Plaintiff's job as a certified registered nurse anesthetist primarily consisted of putting in breathing tubes to rescue dying COVID patients. He did this daily before there were any vaccines or therapeutic agents available. Plaintiff along with his colleagues in anesthesia understood the great personal risk that they were assuming by caring for these morbidly ill patients in such close quarters.

During the COVID outbreak Plaintiff contracted COVID and recuperated. Thereafter, he was tested for antibodies in May 2020 and registered an antibody level of 3.70. A level greater than 0.99 is considered evidence of antibody immunity status. Plaintiff had his antibodies tested again on August 3, 2021 at which time his antibodies were nearly 10 times higher than they were after he recovered from COVID.

For 20 years, Plaintiff has suffered from atrial fibrillation, a condition for which he has received continuous medical treatment which is documented in his medical records. As part of his treatment, he takes a daily dose of blood thinner to prevent blood clots. When Defendants mandated the vaccine, Plaintiff sought to apply for a medical exemption in as much as there is an enhanced risk of myocarditis and blood clots from taking the vaccine along with the documented medical history of anaphylaxis related to taking the vaccinations.

Northwell made it clear that other than risk of anaphylaxis no medical exemptions would be considered or given.

Defendants terminated Plaintiff's employment on September 30th 2021 for failure to get vaccinated.

3. Plaintiff now sues for disability discrimination under the ADA and NYSHRL.

## JURISDICTION AND VENUE

4. Original jurisdiction in this Court is founded upon 28 U.S.C. §1331 in that this is a civil action wherein the matters in controversy arise under the laws of the United States, including but not limited to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101. The legal jurisdiction of this Court is also founded upon the legal principles of pendant jurisdiction as set forth in 28 U.S.C. §1441.

5. Venue is properly laid in the Southern District of New York, pursuant to 28 U.S.C. §1391 (b)(1) & (2), because the Southern District of New York is the judicial district within the state in which a substantial part of the events forming the basis of this lawsuit are alleged to have been committed.

## PROCEDURAL PREREQUISITES

6. Plaintiff has satisfied all procedural requirements prior to the commencement of this action inasmuch as the Complaint has been filed within ninety (90) days of the issuance of a Notice of Right to Sue by the United States Equal Employment Opportunity Commission, to wit, March 22, 2023.

## THE PARTIES

7. At all times hereinafter mentioned, Plaintiff, Timothy J. Lehey (hereinafter "Plaintiff" or "Employee") was and still is a citizen of the State of New York.

8. Upon information and belief and at all times hereinafter mentioned, Defendant, Northwell Health Inc. (hereinafter "Northwell" or "Employer" or "Defendant") is a New York not-for profit corporation with its principal place of business in the State of New York at 1111 Marcus Avenue, New Hyde Park, New York 11042.

9. Upon information and belief and at all times hereinafter mentioned, Defendant, Northwell Health Anesthesiology P.C. (hereinafter "NWHA" or "Employer" or "Defendant") is a New York professional corporation with its principal place of business in the State of New York at 1111 Marcus Avenue, New Hyde Park, New York 11042.

10. Upon information and belief and at all times hereinafter mentioned, Defendant, North Shore LIJ Anesthesiology P.C. (hereinafter "NSLIJA"" or "Employer" or "Defendant") is a New York professional corporation with its principal place of business in the State of New York at 1111 Marcus Avenue, New Hyde Park, New York 11042 and is the predecessor in interest to NWHA.

11. Upon information and belief and at all times hereinafter mentioned, Northwell is the parent company of NWHA and NSLIJA, and exercises domination and control of the policies and administration of the employees and the day-to-day activities of NWHA and NSLIJA.

12. Upon information and belief and at all times hereinafter mentioned, Northwell, NWHA and NJLIJA were "Employers" as defined under the ADA.

13. Upon information and belief and at all times hereinafter mentioned, Northwell, NWHA and NSLIJA were "Employers" as defined under the NYSHRL.

## FACTUAL ALLEGATIONS

14. In 2000, Northeastern Anesthesia hired Plaintiff for the position of Certified Registered Nurse Anesthetist ("CRNA").

15. In 2018 Northwell acquired Northeastern Anesthesia.

16. From 2018 through September 30, 2021 Plaintiff was employed by Northwell, and/or its subsidiaries NWHA and/or NSLIJA.

17. On September 30, 2021 Defendants terminated Plaintiff employment.

18. As of and immediately prior to September 30, 2021 Plaintiff's compensation package was comprised of a base annual salary of $240,000.00, together with other significant benefits.

19. Up to and at the time Plaintiff was terminated by the Defendants he was qualified for the position of CRNA.

20. From the beginning of Plaintiff's employment until his termination, his work performance met or exceeded the reasonable expectations for the position of CRNA.

21. During the period from the onset of COVID in early 2020 and continuing through until his termination on September 30, 2021 Plaintiff's job as a nurse anesthetist primarily consisted of putting in breathing tubes (intubating), to rescue dying COVID patients. Plaintiff performed this daily before there were any vaccines or therapeutic agents available.

22. Plaintiff and his colleagues who worked in anesthesia understood the great personal risk they were assuming by caring for these morbidly ill patients in such close quarters.

23. Personal Protective Equipment ("PPE") was in short supply and made all of the medical personnel more vulnerable to becoming infected. Each patient encounter brought the very real risk of death to the forefront of their minds.

24. The first COVID vaccine was given on December 14, 2020. By that time Plaintiff had already contracted and recovered from COVID.

25. Plaintiff spent the next year and a half by the bedside in ICU's and operating rooms providing direct care of COVID patients at the very height of the pandemic.

26. When Plaintiff finally got tested for antibodies on May 20, 2020 his antibody level was 3.70.

27. A level greater than 0.99 is considered evidence of antibody immunity status.

28. Being concerned about whether he was risking his health by not being vaccinated Plaintiff had his antibodies tested again on August 3, 2021 just weeks before his termination. His antibody levels at that time were nearly ten times higher than they were after he had recovered from COVID. They were at a level of 35.10.

29. Plaintiff continued to care for COVID patients over the last year and not only maintained his immune status but had strengthened it.

30. In September 2021 Plaintiff received an e-mail that had been sent to all employees from human resources notifying them of the Northwell's COVID-19 vaccine mandate requirement.

31. Plaintiff has suffered from a pre-existing health condition, atrial fibrillation, a condition for which he has received documented medical care for over 20 years.

32. Atrial Fibrillation is a "disability" as defined under the ADA and the NYSHRL.

33. As part of his treatment Plaintiff takes a daily dose of blood thinner to prevent blood clots.

34. Because of his Atrial Fibrillation Plaintiff was very concerned about the risk of taking the vaccine due to the increased risk of myocarditis and blood clots associated with the COVID vaccine.

35. Defendants knew of Plaintiff's Atrial Fibrillation and his concern about myocarditis and blood clots associated with the vaccine.

36. Upon information and belief, the only exemptions the Defendants would even consider were those medical exemption requests in which the employee had a documented medical history of anaphylaxis to a vaccination.

37. Upon information and belief, Defendants did not consider any other medical exemptions. In fact, Plaintiff was advised by the Site Human Resources Director for Northwell, Ms. Rebecca Brown, that they "were not accepting medical exemption requests."

38. Plaintiff made the conscious choice that the risk to his life by getting vaccinated and incurring the risk of myocarditis and/or blood clots was greater than the risk of remaining unvaccinated, particularly because of his robust antibody status and the fact that he had been in such close personal contact with the sickest of COVID patients.

39. Myocarditis and blood clots can and do cause death and strokes without warning.

40. Plaintiff spoke to Rebecca Brown, Site Human Resources Director about applying for a medical exemption at which time he, and others, were told that they "were not accepting medical exemption requests." Furthermore, on August 29, 2021 Plaintiff communicated with Marianne Goodnight, Northwell's Chief CRNA, and others regarding his options, the availability of a medical exemption and other questions to which he received no responses.

41. Defendants denied Plaintiff the right to submit a request for a medical exemption.

42. The Defendants refused to engage in the interactive process with the Plaintiff.

43. The Defendants refused to provide any type of accommodation to the Plaintiff, which could have included: daily or weekly testing, placing Plaintiff in an administrative position, for which he had years of experience, at any one of its numerous facilities, a temporary leave of absence or other paid time off ("PTO"), none of which would have caused an undue hardship on Defendants.

44. The Defendants would not approve any kind of leave of absence as they stated that they would not consider a leave of absence until all PTO was exhausted. However, because of the pandemic, the Defendants would not approve PTO for Plaintiff. This left the Plaintiff unable to take PTO or a leave of absence.

45. The Defendants terminated the Plaintiff because of his disability.

46. In addition to the termination of his employment, the Defendants informed Plaintiff that his accumulated paid time off which amounted to over $20,000 would not be paid to him because he is being terminated for "misconduct." In addition, Plaintiff lost a lifelong retirement benefit and was made ineligible for unemployment because the Defendants characterized the termination as one for "misconduct."

47. At all relevant times Plaintiff is a person with a disability within the meaning of the ADA.

48. At all relevant times herein, Plaintiff was an "Employee" entitled to protection within the meaning of the NYSHRL.

49. The available reasonable accommodations would not have been burdensome to Defendants.

50. Plaintiff was, at all relevant times, able to perform the essential functions of his job with reasonable accommodation.

51. Plaintiff's disability was a substantial motivating factor in Defendant's decision to terminate Plaintiff's employment.

## COUNT I
### (Disability Discrimination ADA)

52. Defendants unlawfully discriminated against Plaintiff with respect to the terms and conditions of his employment because of his disability. The disability discrimination includes but is not necessarily limited to having failed to provide Plaintiff with a reasonable accommodation, having failed to engage in the interactive process with the Plaintiff and having terminated Plaintiff's employment. By reason thereof, Defendants violated the ADA.

53. Defendants' conduct as described herein was intentional and done with forethought and with a total disregard for Plaintiff's rights.

54. As a direct and proximate result of the discriminatory practices of the Defendants, Plaintiff has sustained significant economic and compensatory damages. Plaintiff also seeks punitive damages.

## COUNT II
### (Disability Discrimination NYSHRL)

55. Defendants unlawfully discriminated against Plaintiff with respect to the terms and conditions of his employment because of his disability. The disability discrimination includes but is not necessarily limited to having failed to provide Plaintiff with a reasonable accommodation, having failed to engage in the interactive process with the Plaintiff and having terminated Plaintiff's employment. By reason thereof, Defendants violated the NYSHRL.

56. Defendants' conduct as described herein was intentional and done with forethought and with a total disregard for Plaintiff's rights.

57. As a direct and proximate result of the discriminatory practices of the Defendants, Plaintiff has sustained significant economic and compensatory damages. Plaintiff also seeks punitive damages.

## COUNT III
### (Violation of the New York State Department of Health Order for Summary Action Dated August 18, 2021)

58. On August 18, 2021 the New York State Department of Health promulgated an Order for Summary Action ("NYSDOH Order") regarding healthcare workers and the COVID vaccination.

59. The NYSDOH Order provided in part:

> "If any licensed physician or certified nurse practitioner certifies that immunization with COVID-19 vaccine is detrimental to a specific member of a covered entities personnel, based upon a specific pre-existing health condition, the requirements of this section relating to COVID-19 immunization shall be subject to a reasonable accommodation of such health condition only until such immunization is found no longer to be detrimental to the health of such member."

60. The Defendants, by virtue of their actions as hereinbefore set forth, violated the NYSDOH Order as follows:

   a. in refusing to accept requests for medical exemptions;

   b. in unilaterally deciding whether to accept and/or grant a medical exemption;

   c. in failing to engage in the interactive process with Plaintiff; and

   d. in failing to provide Plaintiff with reasonable accommodation.

61. Defendants conduct as described herein was intentional and done with forethought and with a total disregard for Plaintiff's rights.

62. As a direct and proximate result of the discriminatory practices of the Defendants, Plaintiff has sustained significant economic and compensatory damages. Plaintiff also seeks punitive damages.

**WHEREFORE,** Plaintiff demands judgment against the Defendants as follows:

(a) For all forms of relief recoverable under the statutes sued hereunder, including, but not limited to back pay, front pay and compensatory damages, including mental pain and anguish;

(b) For an award of punitive damages;

(c) For an award of attorney's fees;

(d) For an award of costs and disbursements;

(e) Together with interest and further relief as to this Court may seem just and proper.

Dated: New York, NY
June 5, 2023

THE DWECK LAW FIRM, LLP

By: *s/ H.P. Sean Dweck*
H.P. Sean Dweck
Attorney for Plaintiff
1 Rockefeller Plaza, Suite 1710
New York, NY 10020
212-687-8200
hpsdweck@dwecklaw.com