UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMOTHY J. LEHEY,

                Plaintiff,

      -against-

NORTHWELL HEALTH, INC., and NORTH
SHORE LIJ ANESTHESIOLOGY, P.C.,

                Defendants.

**OPINION & ORDER**

23-CV-04708 (PMH)

PHILIP M. HALPERN, United States District Judge:

Timothy Lehey ("Plaintiff") commenced this action against Northwell Health, Inc., Northwell Health Anesthesiology, P.C.,[1] and North Shore-LIJ Anesthesiology, P.C., on June 5, 2023, pressing claims for discrimination on the basis of disability under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 *et seq*., and the New York State Human Rights Law ("NYSHRL"), as well as violations of the New York State Department of Health Order for Summary Action dated August 18, 2021. (Doc. 1, "Compl.").

Northwell Health, Inc., and North Shore-LIJ Anesthesiology, P.C., (together, "Northwell" or "Defendants")[2] moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) on December 1, 2023. (Doc. 19; Doc. 20; Doc. 21; Doc. 22, "Def. Br."). Plaintiff served his opposition on December 29, 2023 (Doc. 23; Doc. 24, "Pl. Br."),[3] and Defendants' motion to dismiss was fully briefed with the filing of their reply memorandum of law on January 12, 2024. (Doc. 25, "Reply").

---

[1] On October 31, 2023, Plaintiff voluntarily dismissed the action without prejudice against Northwell Health Anesthesiology, P.C. (Doc. 17).

[2] Plaintiff alleges that at all relevant times, North Shore-LIJ Anesthesiology, P.C. was a subsidiary of Northwell Health, Inc. (Compl. ¶¶ 2, 16).

[3] Two identical copies of Plaintiff's memorandum of law in opposition were filed on January 12, 2024. (Doc. 23; Doc. 24). The Court considers the later-filed version (Doc. 24) which, according to the docket entry, was filed by Plaintiff rather than Defendants.

For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

From 2018 through September 30, 2021, Northwell employed Plaintiff as a Certified Registered Nurse Anesthetist ("CRNA"). (Compl. ¶¶ 2, 14-16). Plaintiff had over 18 years of experience as a CRNA at the time. (*Id.*). Plaintiff alleges that from the onset of COVID-19 in early 2020 through September 30, 2021, his job duties included providing care to COVID-19 patients. (*Id.* ¶¶ 21, 25).

In September 2021, Plaintiff received an e-mail that had been sent to all Northwell employees notifying them of the COVID-19 vaccine mandate requirement. (*Id.* ¶ 30). Defendants explain (Def. Br. at 6-7) that on August 26, 2021, the New York State Department of Health issued an emergency regulation mandating that hospitals and other healthcare entities continuously require all medically eligible "personnel" to be fully vaccinated against COVID-19 ("DOH Mandate").[4] N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (2021). "Personnel" was defined to include "members of the medical and nursing staff . . . who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." *Id.* § 2.61(a)(2). The DOH Mandate allowed for a medical exemption

---

[4] On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken . . . ." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) (explaining that a court may consider "statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit"). The Court may take judicial notice of "the rule challenged, the related statute and its legislative history . . . and facts not subject to reasonable dispute." *Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 127, n. 1 (E.D.N.Y. 2022).

where the vaccine would be detrimental to the employee's health, only until immunization was no longer detrimental. *Id*. § 2.61(d)(1).

Plaintiff has suffered from atrial fibrillation for over 20 years. (Compl. ¶ 31). Plaintiff's treatment for atrial fibrillation includes a daily dose of blood thinner to prevent blood clots. (*Id*. ¶ 33). Plaintiff alleges that "[b]ecause of his Atrial Fibrillation [he] was very concerned about the risk of taking the vaccine due to the increased risk of myocarditis and blood clots associated with the COVID vaccine." (*Id*. ¶ 34). Plaintiff then "made the conscious choice that the risk to his life by getting vaccinated and incurring the risk of myocarditis and/or blood clots was greater than the risk of remaining unvaccinated. . . ." (*Id*. ¶ 38).

Thereafter, Plaintiff "sought to apply for a medical exemption" to the DOH Mandate. (*Id*. ¶ 2). Plaintiff alleges that Defendants knew of his medical condition and his concerns associated with the vaccine. (*Id*. ¶ 35). Plaintiff further alleges that Defendants did not consider any medical exemptions other than those in which the employee had a documented medical history of anaphylaxis to a vaccination. (*Id*. ¶¶ 36-37). Specifically, Plaintiff alleges that he spoke to Rebecca Brown ("Brown"), the Site Human Resources Director for Northwell, about applying for a medical exemption and that he was told Northwell "[was] not accepting medical exemption requests." (*Id*. ¶¶ 37, 40). Plaintiff also alleges that he communicated with Marianne Goodnight ("Goodnight"), Northwell's Chief CRNA, and others about the availability of a medical exemption and that he did not receive responses to his questions. (*Id*.).

Plaintiff was terminated on September 30, 2021, because he failed to get the COVID-19 vaccine. (*Id*. ¶¶ 2, 17). Because Defendants characterized the termination as one for "misconduct," Plaintiff alleges that he was not paid his accumulated paid time off (which amounted to over $20,000), lost a lifelong retirement benefit, and became ineligible for unemployment. (*Id*. ¶ 46).

This litigation followed.

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[5] A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

**ANALYSIS**

I.      First and Second Claims for Relief: ADA and NYSHRL Discrimination Claims

Plaintiff's First and Second Claims for Relief allege that Defendants discriminated against him in violation of the ADA and NYSHRL by failing to provide a reasonable accommodation, failing to engage in the interactive process, and terminating Plaintiff's employment. (Compl. ¶¶ 52, 55).

The three-part burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is used to analyze discrimination claims under the ADA and NYSHRL. *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, No. 20-03718, 2022 WL 1715977, at *2 (2d Cir. May 27, 2022). The plaintiff must first establish a *prima facie* case of employment discrimination based on a disability before the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the challenged actions. *Id.*; *see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) ("Under that framework, a plaintiff must first establish a *prima facie* case of discrimination, which causes the burden of production to shift to the defendant to offer a legitimate, nondiscriminatory rationale for its actions.").

A *prima facie* case of disability discrimination requires a plaintiff to establish that: (1) "his employer is subject to the ADA;" (2) "he is disabled within the meaning of the ADA or perceived to be so by his employer;" (3) "he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation;" and (4) "he suffered an adverse employment action because of his disability." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008). With respect to a failure to accommodate claim under the ADA, Plaintiff must plead that: "(1) [he] is a person with a disability under the meaning of [the ADA]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [he] could perform the

essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).

Claims of disability discrimination under the NYSHRL are generally analyzed under the same standards as govern claims under the ADA. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006). However, in August 2019, the New York state legislature amended the NYSHRL. N.Y. Exec. Law § 300. The effect of the amendment is to make the standard for NYSHRL claims closer to the more liberal standards of the New York City Human Rights Law ("NYCHRL"). *See DeAngelo v. MAXIMUS/NY Medicaid Choice*, No. 19-CV-07957, 2022 WL 3043665, at *13 (S.D.N.Y. Aug. 2, 2022); *see also Cooper v. Franklin Templeton Invs.*, No. 22-2763, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) ("While New York courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL, some courts in this Circuit have interpreted the amendment as rendering the standard for claims closer to the standard of the NYCHRL."). The NYSHRL amendment applies to claims occurring on or after October 11, 2019, without retroactive effect. *See McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020). Plaintiff's NYSHRL claim rests on conduct post-dating the amendment's effective date. Accordingly, the amended, more liberal standard of the NYSHRL applies.

There is no dispute for purposes of this Motion that Plaintiff's atrial fibrillation is a qualifying disability under the ADA and NYSHRL. (Compl. ¶ 32; Def. Br. at 11, n. 6). Plaintiff's primary theory of liability is that Defendants were aware that his disability prevented him from being vaccinated and fired him without any reasonable attempt to accommodate him. (Pl. Br. at 10). Defendants argue, *inter alia*, that Plaintiff failed to allege that he ever made, or even could

have made, a medically-supported request for accommodation that would have exempted him from the DOH Mandate. (Reply at 9).

The Complaint alleges that Plaintiff "sought to apply for a medical exemption . . ." but was "denied the right to submit a request for a medical exemption." (Compl. ¶¶ 2, 41). Specifically, the Complaint alleges that: (i) Plaintiff spoke to Brown and was told that Defendants "were not accepting medical exemption requests" other than those in which the employee had a documented medical history of anaphylaxis to a vaccination (*id*. ¶¶ 36-37, 40); and (ii) Plaintiff did not receive responses to his August 29, 2021 communication with Goodnight and others about the availability of a medical exemption (*id*. ¶¶ 40-41). While Defendants purport to show that Plaintiff did in fact receive responses to his written questions about the availability of a medical exemption, there remains an uncontroverted allegation that Plaintiff was verbally advised by Brown that Defendants were not accepting medical exemption requests. (*Id*. ¶¶ 37, 40; Opp. at 13; Reply at 10). Taking that allegation as true, as the Court must at this stage, Plaintiff has plausibly alleged that he was denied the opportunity to request a medical accommodation.

Moreover, the DOH Mandate provided a medical exemption to the vaccination requirement in the following limited circumstance:

> If any licensed physician or certified nurse practitioner certifies that immunization with COVID-19 vaccine is detrimental to the health of member of a covered entity's personnel, based upon a pre-existing health condition, the requirements of this section relating to COVID-19 immunization shall be inapplicable only until such immunization is found no longer to be detrimental to such personnel member's health. The nature and duration of the medical exemption must be stated in the personnel employment medical record, or other appropriate record, and must be in accordance with generally accepted medical standards . . . .

10 N.Y.C.R.R. § 2.61(d)(1). Plaintiff alleges that he sought to apply for a medical exemption because his pre-existing condition of atrial fibrillation created an "increased risk of myocarditis

and blood clots associated with the COVID vaccine." (Compl. ¶¶ 2, 34). Defendants argue that

these allegations are insufficient to allege that Plaintiff was eligible for a medical exemption.

(Reply at 8-10). Accepting Plaintiff's allegations as true, the Court cannot conclude based on the

four corners of the Complaint that he was not eligible for a medical exemption from the DOH

Mandate as a matter of law.

Given the Court's finding here that Plaintiff plausibly pled a failure to accommodate claim

in violation of the ADA, Plaintiff has plausibly pled a claim under the more liberal standard in the

NYSHRL. Accordingly, Defendants motion to dismiss the First and Second Claims for Relief is

denied.

II.     Third Claim for Relief: Violation of New York State Department of Health Order
        for Summary Action

Plaintiff's Third Claim for Relief alleges a violation of the New York State Department of

Health's Order for Summary Action dated August 18, 2021 ("Summary Order").[6] (Compl. ¶¶ 58-

62). Defendants argue that this claim fails because the Summary Order does not create a private

right of action and, regardless, was not in effect at the pertinent times. (Def. Br. at 16; Reply at 12-

14). Plaintiff responds that he has properly pled a violation of the Summary Order because the

statutory language remained in effect via the DOH Mandate, which superseded the Summary

Order. (Pl. Br. at 15-16). Plaintiff also argues that "the provision for a medical exemption in the

vaccine mandate unequivocally implies a private right of action for a litigant whose rights are

covered under the statute." (*Id*.). But Plaintiff does not cite, and the Court has not found, any

statutory provision or other authority to suggest that a private right of action exists for an individual

---

[6] The Court may take judicial notice of the Summary Order, which is incorporated by reference in the
Complaint (Compl. ¶¶ 58-59) and was submitted as Exhibit C to the Gomez-Sanchez Declaration. *See*
*Hochul*, 632 F. Supp. 3d at 127, n. 1.

to recover damages under the Summary Order—which is the basis for this cause of action. Accordingly, Defendants' motion is granted as to Plaintiff's Third Claim for Relief.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED in part and DENIED in part.

Defendants' motion is DENIED as to the First and Second Claims for Relief. Defendants' motion is GRANTED as to the Third Claim for Relief.

Defendants are directed to file an answer to the Complaint within 14 days of the date of this Order. The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. 19.

**SO ORDERED.**

Dated:   White Plains, New York
         April 19, 2024

_____
PHILIP M. HALPERN
United States District Judge